**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SHARON GRAY,**

                          **Plaintiff,**                          **1:06-CV-0456**
                                                                   **(NAM)**

                 **vs.**

**MICHAEL J. ASTRUE**, Commissioner of Social
Security Administration,[1]

                          **Defendant.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

Empire Justice Center                            Louise Maria Tarantino, Esq.
119 Washington Avenue
2nd Floor
Albany, New York 12210
**_Attorney for Plaintiff_**

Social Security Administration                   Sommattie Ramrup, Esq.
Office of Regional General Counsel               Barbara L. Spivak, Esq.
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
**_Attorneys for Defendant_**


**Norman A. Mordue, Chief U.S. District Judge:**

                    **MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

        In this action, plaintiff Sharon Gray, moves, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), for a review of a decision by the Commissioner of Social Security denying plaintiff's

_____

        [1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007.  Pursuant to Federal
Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.

application for disability benefits. (Dkt. No. 1). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## II.   FACTUAL BACKGROUND

Plaintiff was born on January 5, 1958 and was 46 years old at the time of the administrative hearing on April 7, 2004. (Administrative Transcript at p. 271)[2].  Plaintiff resides with her husband and 2 children, ages 14 and 25.  (T. 271-272).  Plaintiff's 25 year old son is mentally disabled. (T. 272).  In 1976, plaintiff graduated from high school. (T. 126).  In April 1996, plaintiff was employed for 3 days as a laborer in a factory.  (T. 126, 274).

### A.   Medical Evidence

A review of the record reveals that plaintiff was treated for her alleged disabling conditions by Camille Dillard, M.D., Richard Nocella, M.D., Balazs Selendy, M.D. and Charles Kenny, M.D.

<u>Camille Dillard, M.D.</u>

On November 12, 1999, plaintiff had her first and only examination with Dr. Dillard at Dolgeville Primary Care Center.[3]  (T. 153).  Dr. Dillard noted plaintiff had "no doctor".  (T. 153). Plaintiff stated that she "crie[d] a lot", had severe headaches and was concerned about her father's health and her husband's heart problems. (T. 153).  Plaintiff advised Dr. Dillard that she recently gained 10 pounds and suffered from left knee pain, numbness, a "fire feeling" in her thighs and tingling in her hands. (T .153).  Dr. Dillard noted plaintiff had a history of depression and obesity. (T. 154).  Dr. Dillard diagnosed plaintiff with left knee pain, obesity and stress. (T. 153-154).

---

[2] Portions of the administrative transcript, Dkt. No. 6, will be cited herein as "(T. )".

[3] The record does not indicate whether or not Dr. Dillard specialized in any area of medicine.

On November 12, 1999, Dr. Dillard completed a form entitled Medical Examination for Employability Assessment, Disability Screening and Alcoholism/Drug Determination. (T. 253). Dr. Dillard noted plaintiff had a history of depression, a left knee injury and suffered from COPD.[4] (T. 253). Dr. Dillard opined that plaintiff was "very limited" in her ability to walk, stand, lift, pull, push, bend and climb. (T. 253). Dr. Dillard noted plaintiff had no limitations in sitting, seeing, hearing or speaking. (T. 253). Dr. Dillard concluded plaintiff had moderate limitations when using her hands and suggested that plaintiff avoid prolonged keyboard activities with 15 minute breaks every 2 hours.[5] (T. 253- 254).

Richard Nocella, M.D.

On April 2, 2003, plaintiff had an initial examination with Dr. Nocella, a physician who specialized in family practice at the Primary Care Center. (T. 251). Dr. Nocella diagnosed plaintiff with morbid obesity, left knee pain, occasional shortness of breath and difficulty swallowing. (T. 251). Dr. Nocella recommended that plaintiff monitor her calorie intake and exercise. (T. 251). Dr. Nocella suggested a "swallowing study" prior to plaintiff's next visit. (T. 251).

On April 23, 2003, Dr. Nocella examined plaintiff and noted that a CT of plaintiff's abdomen/pelvis was performed and that the results were pending. (T. 250). Dr. Nocella diagnosed plaintiff with an abdominal/pelvic mass, bilateral wrist pain, left knee pain and morbid

---

[4] COPD is chronic obstructive pulmonary disease. *Dorland's Illustrated Medical Dictionary*, 2139 (31st ed. 2–7).

[5] On March 9, 2000, plaintiff had a telephone consultation with Dr. Dillard for a condition unrelated to the issues at hand. (T. 152).

obesity. (T. 250).  Dr. Nocella also noted that plaintiff may suffer from carpal tunnel and

suggested an EMG after plaintiff's further work up for her abdominal mass.[6]  (T. 250).

On June 10, 2003, Dr. Nocella diagnosed plaintiff with hypertension, bilateral hand pain,

left knee pain, a pelvic mass and obesity. (T. 248).  Dr. Nocella prescribed Altace for plaintiff's

high blood pressure and scheduled plaintiff for an EMG.  (T. 248).  Dr. Nocella suggested that

plaintiff consult with an orthopedist for her chronic left knee pain.  (T. 248).

On June 25, 2003, plaintiff underwent an EMG and Electrodiagnostic Study at Central

New York Physiatry. (T. 242).  Dr. Denny Battista prepared a report and noted plaintiff was

referred by Dr. Nocella to rule out bilateral carpal tunnel syndrome. (T. 242).  Dr. Battista found

evidence of neuropathy at the wrist (carpal tunnel syndrome) severe on the right and "moderate to

severe" on the left. (T. 242).

On August 26, 2003, plaintiff returned to Dr Nocella and stated that she did not want to

have surgery for her abdominal mass. (T. 247).  Dr. Nocella diagnosed plaintiff with

hypertension, bilateral carpal tunnel syndrome, left knee pain, pelvic mass and morbid obesity.

(T. 247).

On February 12, 2004, Dr. Nocella completed a Medical Source Statement. (T. 234).  Dr.

Nocella opined that plaintiff suffered from bilateral carpal tunnel syndrome. (T. 233).  Dr.

Nocella opined that plaintiff could occasionally and frequently lift/carry less than 10 pounds and

was limited to standing and/or walking for less than 2 hours in an 8-hour workday.  (T. 231).  Dr.

Nocella noted plaintiff had no impairment with regard to sitting but that she was limited in

---

[6] EMG (electromyogram) is a record obtained by electromyography - an electrodiagnostic technique for recording the extracellular activity of skeletal muscles at rest, during voluntary contractions, and during electrical stimulation; performed using any of a variety of surface electrodes, needle electrodes, and devices for amplifying, transmitting, and recording the signals. *Dorland's* at 609, 616.

pushing and pulling in the upper and lower extremities with no nature or degree described.  (T. 232).  Dr. Nocella opined that plaintiff could never climb, kneel, crouch, crawl or stoop but could occasionally balance.  (T. 232).  Dr. Nocella also opined that plaintiff was limited in reaching and fingering but unlimited in handling and feeling.  (T. 232).

On March 4, 2004, Dr. Nocella noted that plaintiff presented with "multiple complaints" including bilateral knee, hip and thigh pain.  (T. 244).  Plaintiff also complained of pain in her throat upon swallowing. (T. 244).  Plaintiff advised that she consulted a gynecologist for her abdominal mass who reiterated the need for surgery.  (T. 244).   However, plaintiff advised Dr. Nocella that she "turned to herbal therapy" and felt that her mass had reduced in size.  (T. 244).  Plaintiff stated that she no longer had back pain and less frequent menstrual periods.  (T. 244).

Upon examination, Dr. Nocella found plaintiff to be obese and noted a positive abdominal mass in the region of the uterus which was less obvious than in previous examinations but difficult to assess due to plaintiff's morbid obesity.  (T. 244).  Dr. Nocella noted plaintiff exhibited a full range of motion while seated and ambulated with crutches. (T. 244).  Dr. Nocella diagnosed plaintiff with chronic bilateral knee and hip pain, morbid obesity and dysphagia.[7]   Dr. Nocella recommended that plaintiff continue to lose weight and suggested that plaintiff return to Dr. Kenny, as needed.  (T. 244).  Dr. Nocella prescribed Bextra and scheduled plaintiff for a swallowing visualization.[8]  (T. 245).  Dr. Nocella suggested that plaintiff continue with her herbal treatments for her mass but urged plaintiff to revisit the possibility of surgery.  (T. 245).  On

---

[7] Dysphagia is difficulty swallowing.  *Dorland's* at 587.

[8] Bextra is an anti-inflammatory used for symptomatic treatment of osteoarthritis or rheumatoid arthritis.  *Id.* at 215, 2048.

5

March 20, 2004, Dr. Nocella noted that plaintiff had difficulty swallowing foods and suggested speech pathology. (T. 241).

On March 30, 2004, Dr. Nocella completed a physical capabilities evaluation. (T. 239). Dr. Nocella opined that plaintiff could sit for 8 hours a day if she had breaks to stretch. (T. 239). Dr. Nocella repeated his prior opinion that plaintiff could lift less than 10 pounds. (T. 239).  Dr. Nocella stated the opinion was "a similar version from the original to more appropriately reflect the severity of plaintiff's carpal tunnel syndrome".   (T. 240).

Balazs Selendy, M.D.

On May 12, 2003, plaintiff was examined by Dr. Selendy, a gynecologist at Bassett Healthcare. (T. 222).  Plaintiff advised Dr. Selendy that she had a disability examination by her local physician which revealed an abdominal mass.  (T. 222).  Dr. Selendy noted that a CT scan and ultrasound revealed an 18-cm abdominal mass which may be related to the right ovary. (T. 222).

Upon examination, Dr. Selendy found plaintiff to be obese but in no acute distress. (T. 222).  Dr. Selendy noted that he was unable to feel an enlarged liver or spleen but found the mass "vaguely palpable underneath the thick abdominal wall". (T. 222).  Dr. Selendy reviewed plaintiff's radiological films and noted that the most likely diagnoses was uterine leiomyomata.[9] (T. 222).  Dr. Selendy advised plaintiff that surgery was necessary.  (T. 222).

On May 14, 2003, Dr. Selendy contacted plaintiff and advised that plaintiff's blood work was within normal limits.  (T. 224).  Dr. Selendy suggested an exploratory laparotomy and a total abdominal hysterectomy with bilateral salpingo-oophorectormies.[10]  Dr. Selendy further

---

[9] A leiomyomata is a benign tumor derived from smooth muscle.  *Dorland's* at 1032.

[10] Salpingo-oophorectomy is surgical removal of a uterine tube and ovary.  *Id*. at 1690.

recommended that plaintiff consider having her ovaries removed and suggested hormonal replacement. (T. 224).

Charles Kenny, M.D.

On September 25, 2003, plaintiff had an initial examination with Dr. Kenny, an orthopedic surgeon. (T. 263, Dkt. No. 7, p. 14). Plaintiff stated that she weighed 285 pounds and complained of pain in her knees and numbness/pain in her hands and fingers. (T. 263). Dr. Kenny noted that plaintiff wore a brace on her leg but complained that it "cut" her circulation. (T. 263). Dr. Kenny noted plaintiff was a "stay at home mom". (T. 263).

Upon examination, Dr. Kenny found plaintiff to be overweight with "a pleasant mood". (T. 264). Dr. Kenny found that plaintiff exhibited a full and painless range of motion in her spine, shoulders, wrists, fingers, hip, ankles and toes. (T. 263-264). Dr. Kenny found no evidence of swelling or tenderness in plaintiff's spine or upper/lower extremities. (T. 263-264). Dr. Kenny noted plaintiff walked with an antalgic gait on the left and that plaintiff exhibited pain with motion in both knees and crepitus.[11] (T. 263). Dr. Kenny diagnosed plaintiff with carpal tunnel syndrome and bilateral chondromalacia of the patella.[12] (T. 264). Dr. Kenny noted that plaintiff's knee treatment was limited due to her weight and recommended a crutch and deep water exercise. (T. 264). Dr. Kenny suggested vitamins, a night splint and a "work up" for thyroid disease, diabetes and other possible metabolic causes of plaintiff's carpal tunnel syndrome. (T. 264).

On February 17, 2004, plaintiff had a follow up visit with Dr. Kenny and complained of "prickly pain" in both thighs. (T. 262). Dr. Kenny noted plaintiff had no exercise program and

---

[11] Crepitus is a grating sensation caused by the rubbing together of the dry surfaces of joints. *Dorland's* at 437.

[12] Chondromalacia is pain in the anterior aspect of knee with flexion with a softening of articular cartilage. *Id.* at 358.

was "not inclined" to exercise.  (T. 262).   Dr. Kenny again found that plaintiff exhibited a full and painless range of motion and that plaintiff's straight leg raising was "strong".  (T. 262).  Dr. Kenny noted plaintiff's thighs and patellae were "somewhat tender". (T. 262).  Dr. Kenny's diagnosis was unchanged. (T. 262).

### B.      Consultative Examinations

<u>Annette Payne, Ph.D.</u>

On April 10, 2003, plaintiff was evaluated by Annette Payne, Ph.D., at the request of the agency.  (T. l 78).  Plaintiff advised that she resided with her husband and 2 children, ages 13 and 24.  (T. 178).  Plaintiff denied any prior psychiatric treatment including outpatient counseling.  (T. 178).  Plaintiff complained of difficulty sleeping, gasping for air and anxiety.  (T. 179).  Plaintiff denied experiencing any significant depressive symptoms but stated she was "afraid to go out because of her knees".  (T. 179).   Plaintiff stated she was capable of caring for herself and that she was able to clean, do laundry, shop and cook.  (T. 179).  Plaintiff also advised that she home schooled her children. (T. 179).

Upon examination, Dr. Payne noted plaintiff exhibited restless behavior, an anxious mood and affect but that plaintiff was alert and oriented. (T. 180).  Dr. Payne diagnosed plaintiff with anxiety disorder, arthritis, left shoulder pain, degenerative joint disease and emphysema.  (T. 180).  Dr. Payne noted that plaintiff's attention and memory were remotely impaired due to her anxiety.  (T. 180).  Dr Payne opined that plaintiff could understand simple directions and instructions.  (T. 180).  Dr. Payne concluded that plaintiff was mildly limited with attention and concentration, learning new tasks, making decisions, relating with others and stress. (T. 180).

<u>Robert Weinberg, M.D.</u>

On April 10, 2003, Dr. Weinberg performed an internal medicine examination of plaintiff at the request of the agency.  (T. 182).  Plaintiff complained of pain in her knee and leg with swelling and pain/cramping in her hands. (T. 182).  Plaintiff stated that she was able to hold a pencil but unable to write or hold other things.  (T. 182).   Plaintiff stated that she had no "real examination by a primary care doctor in 25 years".  (T. 183).  Dr. Weinberg noted that plaintiff did not use an ambulatory device. (T. 183).  Plaintiff stated that she cooked every day, cleaned 3 times a month, did laundry 3 - 4 times a week, and shopped 3 times a month. (T. 183-184).  Plaintiff also advised that she was able to bathe, dress, watch television and read. (T. 183-184).

Upon examination, Dr. Weinberg found plaintiff to be morbidly obese with an abnormal gait due to her large mass.  (T. 185).  Dr. Weinberg noted that plaintiff came to the examination with an elastic brace on her left knee but commented that plaintiff needed no assistance climbing on or off of the examination table.  (T. 185).  Dr. Weinberg noted that plaintiff exhibited a full range of motion in her cervical and lumbar spine with straight leg raising negative bilaterally. (T. 185).  Dr. Weinberg noted crepitation in plaintiff's left knee with flexion at 90 degrees but no swelling. (T. 185).  Dr. Weinberg found plaintiff's strength in her upper and lower extremities to be "5/5" and plaintiff's grip strength "5/5 bilaterally". (T. 185).  Dr. Weinberg found a "questionable mass in [plaintiff's] abdomen". (T. 185).   Dr. Weinberg diagnosed plaintiff with morbid obesity, hypertension, abdominal mass, bilateral leg lymphedema and chronic left knee pain.  (T. 186).

Dr. Weinberg opined that plaintiff was primarily limited by her morbid obesity.  (T. 186).  Dr. Weinberg concluded that plaintiff had moderate limitations in walking and standing due to her obesity, left knee pain and leg pain.  (T. 186).

C.      Residual Functional Capacity ("RFC") Assessments

9

On April 16, 2003, D. Montavon, a state agency medical "reviewer", prepared a physical residual functional capacity assessment.[13]  The reviewer noted plaintiff's primary diagnosis was morbid obesity and elevated blood pressure with a secondary diagnosis of abdominal mass.  (T. 194).   The reviewer also noted plaintiff suffered from other impairments including bilateral leg lymphedema and degenerative disc disease.  (T. 194).  The reviewer found plaintiff could occasionally lift 20 pounds and frequently lift/carry 10 pounds.  (T .l95).  The reviewer also found that plaintiff could stand and/or walk and sit for 6 hours in an 8 hour workday.  (T. 195).  The reviewer noted plaintiff was unlimited in her ability to push/pull and that plaintiff could occasionally balance, climb, stoop, kneel, crouch and crawl. (T. 196).  The reviewer found that based upon plaintiff's admitted activities of daily living, plaintiff's allegations of limitations were not credible.  (T. 198).

On April 17, 2003, Michelle Marks, Ph.D., prepared a Mental RFC assessment at the request of the agency.  (T. 202).  Dr. Marks concluded that plaintiff was not significantly limited in understanding and memory or concentration and persistence with the exception of moderate limitations in maintaining attention for extended periods.  (T. 200).  Dr. Marks also concluded that plaintiff was not significantly limited in social interaction or adaptation.  (T. 201).  Dr. Marks found that plaintiff  retained the ability to understand and follow direction, sustain reasonable pace, maintain social behavior, make decisions and adapt to minor changes.  (T. 202).

Dr. Marks also prepared a Psychiatric Review Technique.  (T. 209).  Dr. Marks found that plaintiff did not have a medically determinable impairment and found that plaintiff had no

---

[13] The signature line of the document was modified with a line through the phrase "medical consultant" substituted with the word "Reviewer". (T. 199). The record does not contain any information regarding D. Montavon's qualifications.

limitations in activities of daily living, social functioning and moderate limitations with attention

and no episodes of deterioration.  (T. 214).

## III.    PROCEDURAL HISTORY

On February 26, 2003, plaintiff protectively filed an application for supplemental security

income ("SSI") benefits.  (T. 119).  On April 21, 2003, the application was denied.  (T. 66).

Plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on

April 7, 2004.  (T. 80).  On August 18, 2004, a supplemental hearing was held before the ALJ for

the purposes of eliciting testimony from a vocational expert.  (T. 89).   On September 23, 2004,

ALJ Carl E. Stephan issued a decision denying plaintiff's claim for benefits.  (T. 58-65).  On

February 9, 2006, the Appeals Council denied plaintiff's request for review, rendering the ALJ's

decision the final determination of the Commissioner.  (T. 2).  Exhausting all her options for

review through the Social Security Administration's tribunals, plaintiff brings this appeal. (Dkt.

No. 1).

## IV.    ADMINISTRATIVE LAW JUDGE'S DECISION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to

individuals with "disabilities."  The Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not less than

12 months."  42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability

claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2)
> that he has a 'severe impairment,' (3) that the impairment is not one [listed in
> Appendix 1 of the regulations] that conclusively requires a determination of disability,
> and (4) that the claimant is not capable of continuing in his prior type of work, the
> Commissioner must find him disabled if (5) there is not another type of work the

claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

In this case, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity since filing her application for supplemental security income. (T. 58). At step two, the ALJ concluded that plaintiff has severe musculoskeletal impairments. (T. 59). At the third step of the analysis, the ALJ determined that plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Social Security Regulations (the "Regulations"). (T.59). At the fourth step, the ALJ found that plaintiff had the RFC to:

> sit, stand and walk for six hours each in an eight-hour workday and lift and carry 20 pounds occasionally and 10 pounds frequently. I find that the claimant retains the residual functional capacity to perform work at the light level of exertion that requires only occasional climbing, stooping, crouching and crawling and no repetitive activities using her right hand. Due to anxiety, the claimant has occasional difficulties with attention/concentration, stress and interacting with others. (T. 62).

The ALJ concluded that plaintiff lacked past relevant work experience. (T. 65). The ALJ obtained the testimony of a vocational expert to determine whether there were jobs plaintiff could perform. Based upon the vocational expert's testimony, the ALJ concluded at step five, that there were a significant number of occupations in the national and regional economy that plaintiff could perform, such as work as a mail clerk and messenger. (T. 64). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Act. (T. 65).

## V.      DISCUSSION

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).  Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  The Court may also set aside the Commissioner's decision when it is based upon legal error.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the ALJ failed to follow the treating physician rule; (2) the ALJ improperly assessed plaintiff's credibility; (3) the ALJ's RFC determination is not supported by substantial evidence; and (4) the ALJ relied upon the vocational expert's response to a defective hypothetical and thus, the Commissioner did not sustain his burden of proof at step five of the sequential evaluation process.  (Dkt. No. 7).  Plaintiff claims that remand for additional proceedings would serve no useful purpose and therefore, payment of benefits is appropriate. (Dkt. No. 17).

Defendant argues that the ALJ assigned the appropriate weight to the medical opinions, properly analyzed plaintiff's credibility and further, that substantial evidence exists to support the ALJ's RFC determination.  (Dkt. No. 16).   However, defendant requests remand for further proceedings as the ALJ failed to explain and reconcile the testimony of the vocational expert with the information in the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT").  (Dkt. No. 16, p. 4-6).

### A.    Treating Physician Rule

Plaintiff argues that the ALJ erred in failing to assign "controlling weight" to the opinions of plaintiff's treating physicians, Drs. Dillard and Nocella. (Dkt. No. 7, p. 16).

Plaintiff also claims that the ALJ failed to assign the appropriate weight to Dr. Weinberg's opinion.  (Dkt. No. 7, p. 15).   Defendant contends that the ALJ properly evaluated and applied the Regulations to the physicians' opinions.  (Dkt. No. 16, p. 6-9).

The Second Circuit has defined a treating physician as one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual."  *Coty v. Sullivan*, 793 F.Supp. 83, 85 -86 (S.D.N.Y. 1992) (quoting *Schisler v. Bowen*, 851 F.2d 43 (2d Cir. 1988)).   Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).   Neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion.  *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. 404.1527(d)(2).  The Regulations also specify that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schaal v. Apfel*, 134 F.3d 501, 503-504 (2d Cir. 1998).  Failure

to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand.  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

The opinion of a treating physician is not entitled to controlling weight where the opinion is not a functional analysis.  *See George v. Bowen*,  692 F.Supp. 215, 219 (S.D.N.Y. 1988) (concluding that treating physicians report was not entitled to controlling weight as it contained no assessment of plaintiff's ability to lift and carry weight); s*ee also Hopper v. Comm'r of Social Sec.*, 2008 WL 724228, at *9 (N.D.N.Y. 2008) (holding that the treating physician never provided any opinions regarding the plaintiff's ability to do work-related activities nor his level of disability, thus the ALJ did not err in failing to discuss what weight should be given to the treating physician's findings as none of those findings described the plaintiff's limitations).

### 1.    Dr. Dillard

The ALJ discussed Dr. Dillard's opinions and concluded that:

> "[t]he record does not reveal any actual treatment after March 2000 and the treatments [sic] visits had been relatively infrequent.  Therefore, I give Dr. Dillard's opinion only some weight." (T. 59).

Plaintiff claims that although she did not treat with Dr. Dillard at the Primary Care Center after March 2000, plaintiff continued to be a patient at that clinic and treated with Dr. Nocella. (Dkt. No. 7, p. 13).   Plaintiff argues that Dr. Dillard's opinions were entitled to controlling weight because Dr. Dillard "continued to be involved with [plaintiff's] treatment and care through at least September 2002".  *Id.*

On November 12, 1999, plaintiff had her initial and only examination with Dr. Dillard. (T. 254).  On the same day, Dr. Dillard completed a form for the NYS Department of Social Services. (T. 253).  Dr. Dillard opined that plaintiff was "very limited" in walking, standing, lifting, pulling, pushing, bending and climbing and "moderately limited" when using her hands.  (T.

253).  There is no record of any treatment by Dr. Dillard after November 12, 1999.[14]  (T. 151 -

168).

The Court finds substantial evidence to support the ALJ's decision to afford Dr. Dillard's

opinion "some weight".  Dr. Dillard's opinion of plaintiff's limitations was based upon a single

examination.   Dr. Dillard did not provide plaintiff with the type of ongoing medical treatment

that would define Dr. Dillard as a "treating physician".  *See George*, 692 F.Supp. at 219 (holding

that the nature of the physician's relationship with the plaintiff did not rise to the level of a

treating physician as the physician had only seen the plaintiff on two occasions); *see also*

*Quinones v. Barnhart,* 2006 WL 2136245, at *7 (S.D.N.Y. 2006) (holding that the treating

physician's opinion was correctly afforded less weight as he only saw the plaintiff on one

occasion).  Further, Dr. Dillard's opinion is not entitled to controlling weight as Dr. Dillard

provided her opinion in 1999 - 4 ½ years before the administrative hearing.  *See Bromback v.*

*Barnhart*, 2004 WL 1687223, at *7 (S.D.N.Y. 2004) (holding that the ALJ should not have relied

on an evaluation that was made one year prior to the hearing).  Finally, Dr. Dillard's opinion is

not entitled to controlling weight as it cannot be considered a functional analysis.  Dr. Dillard's

opinion lacked information regarding the crucial factors necessary to determine plaintiff's

residual functional capacity.  Therefore, the Court finds substantial evidence to support the ALJ's

determination that Dr. Dillard's opinion is entitled to "some weight".

### 2.     Dr. Nocella

Plaintiff argues that Dr. Nocella's opinions are consistent with Dr. Kenny's opinions and

supported by objective testing and therefore, Dr. Nocella's opinions should have been assigned

---

[14] The record contains a notation from Dr. Dillard on March 9, 2000 indicating that Dr. Dillard spoke with plaintiff on the telephone.  (T. 152).

controlling weight. (Dkt. No. 7, p. 14).   Defendant claims that Dr. Nocella's opinions are

inconsistent with his treatment notes, Dr. Kenny's opinions and plaintiff's daily activities.  (Dkt.

No. 16, p. 7).[15]

      The ALJ assigned "some weight" to Dr. Nocella's opinions.  (T. 61).  The ALJ discussed

his reasons for failing to assign controlling weight to Dr. Nocella's opinions:

> The record documents very limited treatment for the claimant's carpal tunnel
> syndrome and bilateral knee pain.  The claimant has never had surgery or physical
> therapy and only takes over-the-counter medication for her musculoskeletal
> impairments.  Additionally, the claimant reported that she was able to perform
> numerous activities including doing chores, shopping, laundry, going to church
> weekly and home schooling children.  These activities are not consistent with such
> disabling symptomatology as described by the claimant.  Furthermore, the course of
> treatment pursued by Dr. Nocella has not been consistent with what one would
> expect if the claimant were truly disabled, as the doctor has reported. (T. 61).

After reviewing the Administrative Transcript, the Court finds that the ALJ improperly

discounted Dr. Nocella's opinions based upon factors which do not constitute substantial

evidence.

      Dr. Nocella treated plaintiff from April 2003 until March 2004 and provided two different

functional evaluations.  The ALJ improperly discounted Dr. Nocella's opinions because of Dr.

Nocella's "limited" course of treatment and the fact that plaintiff took only over-the-counter

medication.  *See Burgess v. Astrue*, 2008 WL 3248567, at *11 (2d Cir. 2008) (holding that the

opinion of a treating physician may not be discounted merely because he has recommended a

conservative treatment regimen); *see also Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir. 2000)

(district court erred in ruling that the treating physicians treatment - including conservative

---

[15] Plaintiff argues that Dr. Nocella's opinions are consistent with Dr. Kenny's opinions.  Conversely, defendant argues that Dr. Nocella's opinions are inconsistent with Dr. Kenny's opinions.  The record contains two treatment notes from Dr. Kenny. (T. 262-264).  The notes are devoid of any opinion regarding plaintiff's functional limitations.  The record does not contain any RFC analysis or medical source statement from Dr. Kenny.

physical therapy but no surgery or prescription drugs - was substantial evidence that the plaintiff was not disabled).

The ALJ further failed to apply the Regulations as he did not consider clinical and laboratory evidence that supported Dr. Nocella's opinions.  Dr. Nocella's diagnosis of carpal tunnel syndrome was confirmed by Dr. Kenny, Dr. Battista and objective testing (EMG).  The ALJ noted that "EMG findings revealed finding [sic] consistent with bilateral focal median neuropathy at the wrist" (T. 58-59) but the ALJ did not explain why he discounted these objective findings when he analyzed Dr. Nocella's opinions.  *See Veresan v. Astrue*, 2007 WL 1876499, at *5 (E.D.N.Y. 2007) (holding that such an omission makes it difficult, if not impossible, to gauge why the ALJ decided to give less weight to those opinions); *see also Fernandez v. Apfel*, 2000 WL 271967, at *7 (E.D.N.Y. 2000) (holding that in rejecting the treating physician's opinion, the ALJ erred in failing to discuss the clinical and laboratory diagnostic measures that supported the doctor's findings, including an EMG test).

With respect to plaintiff's daily activities, it is improper for the ALJ to substitute his judgment for that of the treating physician as to the significance of a claimant's ability to perform daily activities.  *Doyle v. Apfel*, 105 F.Supp.2d 115, 120 (E.D.N.Y. 2000) (citing *Balsamo v. Chater*, 142 F.3d 75, 81-82 (2d Cir. 1998) (holding that it is improper to reject the testimony of a treating physician based upon consideration of mundane activities (such as watching TV, doing light household work, going out to dinner periodically and taking occasional trips)).  While facts pertaining to a claimant's daily activities are pertinent, they "do not, alone or in combination with the ALJ's observations of [claimant] at the hearing, constitute substantial evidence to rebut the conclusions of [claimant's] physicians." *Cruz v. Bowen*, 1987 WL 19965, at *7 (S.D.N.Y. 1987) (quoting *Aubeuf v. Schweiker*, 649 F.2d 107, 113-114 (2d Cir. 1981)).  The ALJ cannot

improperly substitute his own opinion for the opinions of the physicians rather, the ALJ must cite to medical evidence establishing that plaintiff's activities are inconsistent with plaintiff's claimed disability.  *See Brown v. Barnhart*,  418 F.Supp.2d 252, 262 (W.D.N.Y. 2005).

In this case, plaintiff's daily activities do not provide substantial evidence to contradict Dr. Nocella's assessments of plaintiff's functional capacity.  The ALJ failed to sufficiently develop the record regarding the level of physical exertion or frequency of plaintiff's daily activities.  *See Riechl v. Barnhart*, 2003 WL 21730126, at *14 (W.D.N.Y. 2003).  The ALJ also improperly characterized plaintiff's daily activities.  Specifically, plaintiff testified that she shopped for groceries once a month with her husband.  (T. 278).  Further, plaintiff testified that she "seldom" went to church.  (T. 288).

While it is not clear that the ALJ was required to assign controlling weight to Dr. Nocella's opinions, the ALJ did not provide an adequate explanation for his decision to afford Dr. Nocella's assessments only "some weight".  Thus, upon remand, the ALJ is instructed to follow the Regulations and develop the record accordingly.

### 3.    Dr. Weinberg

Plaintiff argues that Dr. Weinberg's opinion is consistent with the opinions of plaintiff's treating doctors.  (Dkt. No. 7, p. 15).  Further, plaintiff claims that the ALJ failed to develop the record to clarify any perceived inconsistencies in Dr. Weinberg's opinion.  (Dkt. No. 7, p. 15-16).  Defendant contends that the ALJ correctly determined that Dr. Weinberg's opinion was non-specific.  (Dkt. No. 16, p. 8).

The ALJ discussed Dr. Weinberg's examination and opinion and found that:

Dr. Weinberg's opinion regarding claimant's limitations in walking and standing were non-specific and therefore, I only give his opinion some weight.  (T. 60).

19

The Court finds that the ALJ assigned the appropriate weight to Dr. Weinberg's opinion. The treating physician rule does not apply to consulting doctors. *See Jones v. Shalala*, 900 F.Supp. 663, 669 (S.D.N.Y. 1995); *see also Limpert v. Apfel*, 1998 WL 812569, at *6 (E.D.N.Y. 1998). Therefore, the ALJ was entitled to give less weight to Dr. Weinberg's opinion than to the opinions of treating sources. 20 C.F.R. § 404.1527(d)(2); *see Schaal v. Apfel*, 134 F.2d 496, 504 (2d Cir. 1997). Dr. Weinberg's opinion did not provide a functional analysis and only opined that plaintiff had "moderate limitations". (T. 186). Dr. Weinberg's assessment failed to provide the necessary information to enable the ALJ to properly assess plaintiff's RFC. *See Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (holding that consulting physicians opinion that the plaintiff's impairment was "lifting and carrying moderate; standing and walking, pushing and pulling and sitting mild" lacked specificity and did not permit the ALJ to make the necessary inference that the plaintiff could perform the exertional requirements of sedentary work).

Plaintiff contends that if the ALJ found Dr. Weinberg's opinion "nonspecific", the ALJ was obligated to contact Dr. Weinberg to obtain clarification.[16]  (Dkt. No. 7, p. 15). The Court finds this argument to be without merit. The ALJ's duty to develop the record goes "hand in hand" with the treating physician rule. *See Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y. 2004). The weight afforded a consultative opinion depends upon the thoroughness of the underlying medical examination and the degree of light the opinion sheds on the conflicting assessment of the treating physician. *Cary v. Bowen*, 1990 WL 84357, at *4 (E.D.N.Y. 1990). While an ALJ must give "good reasons" if he does not give a treating physician's opinion sufficient weight, there is no similar requirement for consulting physicians. *Limpert*, 1998 WL 812569, at *6.

---

[16] Plaintiff does not cite to any caselaw in support of this argument.

Based upon a review of the Administrative Transcript, the Court concludes that the ALJ properly assigned only "some weight" to Dr. Weinberg's opinion.

**B.      Credibility**

Plaintiff argues that the ALJ improperly found that plaintiff was "not totally credible". (Dkt. No. 7, p. 19).  Plaintiff claims that the ALJ erred when he relied upon the "sit and squirm" test and further, that substantial evidence supports plaintiff's subjective complaints of pain.  (Dkt. No. 7, p. 20-21).  Defendant contends that the ALJ thoroughly assessed plaintiff's credibility and that plaintiff has not offered any valid reasons for disturbing that finding. (Dkt. No. 16, p. 12).

It is well settled that "a claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence".  *Simmons v. U.S.R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted).  "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. 2007) (citing 20 C.F.R. § 404.1529(c)(2)) .  The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (holding that an ALJ is in a better position to decide credibility).

If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4)

type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her neck and back pain are consistent with the objective medical and other evidence.  *See* SSR 96-7p, 1996 WL 374186, at \*2 (SSA 1996).  A claimant's subjective symptoms must be supported by medical signs or conditions that reasonably could be expected to produce the disability or alleged symptoms based on a consideration of all the evidence.  *Pareja v. Barnhart*,  2004 WL 626176, at \*10 (S.D.N.Y. 2004) (concluding that despite plaintiff's subjective complaints, the ALJ noted that several physicians determined that plaintiff could do medium work based on her medical records and on their own evaluations of her test results).  One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record.  SSR 96-7p, 1996 WL 274186, at \*5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Martone v. Apfel*, 70 F. Supp.2d 145, 151 (N.D.N.Y. 1999); *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.  *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F.Supp 604, 608 (S.D.N.Y. 1987)) (citations omitted).

In this case, the ALJ noted that plaintiff "did not wear any braces" and "did not appear to be in any discomfort throughout the hearing". (T. 62). The ALJ found that "[d]espite the claimant's allegations of debilitating pain and limitations, I find very little medical support". (T. 63). The ALJ further noted "[t]he claimant's daily activities are inconsistent of someone suffering from such debilitating symptoms as to render her disabled". (T. 63). The ALJ concluded that plaintiff's allegations as to the frequency and severity of her symptoms and limitations were "not fully credible". (T. 63).

Plaintiff contends that the ALJ's observation of plaintiff during the hearing is an inappropriate test for the evaluation of plaintiff's subjective complaints of pain. (Dkt. No. 7, p. 19). The Court disagrees. The Second Circuit has not held that it is always error for an ALJ to take account of a claimant's physical demeanor in weighing the credibility of his testimony as to physical disability. *Schaal*, 134 F.3d at 502; *Spielberg v. Barnhart*, 367 F.Supp.2d 276, 282 (E.D.N.Y. 2005) (ALJ may give limited weight to his observations about plaintiff's demeanor at the hearing, as provided by SSR 96-97p). Rather, the observations should be assigned only "limited weight" and it is not per se legal error for an ALJ to consider the demeanor as one of several factors in evaluating credibility. *Id*.

Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ applied the correct legal standard in assessing plaintiff's credibility. The ALJ did not rely exclusively upon his observations of plaintiff at the hearing. The ALJ discussed plaintiff's daily activities and noted plaintiff could care for her personal needs, cook, wash dishes, do laundry, vacuum, clean, shop, walk to get the mail and read the Bible. (T. 63). The ALJ also noted that plaintiff "home schooled" her 14 year old daughter. (T. 63, 280). The ALJ also discussed

plaintiff's conservative medical treatment, plaintiff's attempts to lose weight and noted plaintiff

"only takes Tylenol for pain". (T 63-64).

In addition to the testimony cited by the ALJ, Dr. Kenny's office notes contain no

objective findings to support plaintiff's complaints of pain.  (T. 263-264).  Dr. Kenny found that

plaintiff exhibited full and painless range of motion in her spine and upper/lower extremities. (T.

263-264).  Dr. Weinberg's records also indicate that plaintiff had full range of motion in all

extremities, negative straight leg raising and adequate strength.  (T. 185); *see Filoramo v. Apfel*,

1999 WL 1011942, at *9 (E.D.N.Y. 1999) (holding that the plaintiff's allegations of disabling

pain were not supported by objective evidence in doctors' notes).

Consequently, the Court finds that the ALJ properly assessed the factors enumerated in 20

C.F.R. §404.1529(c)(3)(i)-(vi) and § 416.929(c)(3)(i)-(vi).   The ALJ adequately explained the

reasons for discrediting plaintiff's statements.  Further, the ALJ's decision to reject plaintiff's

complaints is supported by substantial evidence.

### C.    RFC Assessment

Plaintiff argues that the ALJ erred in formulating plaintiff's RFC. (Dkt. No. 7, p.

16).  Defendant claims that the ALJ's decision illustrates that the appropriate factors were

considered in determining the RFC. (Dkt. No. 16, p. 9).

Residual functional capacity is:

> "what an individual can still do despite his or her limitations . . . .  Ordinarily,
> RFC is the individual's maximum remaining ability to do sustained work
> activities in an ordinary work setting on a regular and continuing basis, and
> the RFC assessment must include a discussion of the individual's abilities on
> that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days
> a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling

Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996

WL 374184, at *2 (S.S.A. July 2, 1996)).  In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis.  20 C.F.R. § 404.1545(a)**.**

In this case, the ALJ found that plaintiff had the RFC to:

> sit, stand and walk for six hours each in an eight-hour workday and lift and carry 20 pounds occasionally and 10 pounds frequently.  I find that the claimant retains the residual functional capacity to perform work at the light level of exertion that requires only occasional climbing, stooping, crouching and crawling and no repetitive activities using her right hand.  Due to anxiety, the claimant has occasional difficulties with attention/concentration, stress and interacting with others.  (T. 62).

As previously discussed, substantial evidence does not support the ALJ's decision to assign "some weight" to Dr. Nocella's opinions.  Furthermore, while the ALJ discussed the medical record, it is unclear on what specific evidence the ALJ relied in assessing plaintiff's RFC.  The ALJ seemingly relies upon the Physical RFC Assessment of D. Montavon.[17]  However, the Court finds that the reviewer's opinion carries little weight and cannot constitute substantial evidence.  *Dejesus v. Barnhart*, 2007 WL 528895, at *7 (W.D.N.Y. 2007) (holding that the RFC form does not indicate that the examiner is a physician, nor does it indicate any other title or qualifications, accordingly the Court does not believe that it is entitled to any weight).  Upon review of the record, the Court cannot determine whether or not the ALJ's determination of plaintiff's RFC is supported by substantial evidence and remands the matter for a proper evaluation of plaintiff's RFC.

### D.   Vocational Expert

At the fifth step of the sequential evaluation of disability, the Commissioner bears the responsibility of proving that plaintiff is capable of performing other jobs existing in significant

---

[17] Although the ALJ did not expressly cite to the Physical RFC prepared by D. Montavon, the exertional limitations are identical.  (T. 195).

numbers in the national economy in light of plaintiff's residual functional capacity, age, education, and past relevant work. 20 C.F.R. §§ 416.920, 416.960. Ordinarily, the Commissioner meets his burden at this step "by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). Sole reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's limitations. *Id*. at 606. For example, use of the grids as the exclusive framework for making a disability determination may be precluded where, as here, plaintiff's physical limitations are combined with non-exertional impairments which further limit the range of work she can perform. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). In these circumstances, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp*, 802 F.2d at 603; *see also Melchior v. Apfel*, 15 F. Supp. 2d 215, 58 (N.D.N.Y. 1998) (stating "where nonexertional limitations significantly diminish the ability to perform a full range of work, it is appropriate that the ALJ present testimony from a vocational expert").

A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *Bosmond v. Apfel*, 1998 WL 851508, at *8 (S.D.N.Y. 1998) (citation omitted); *see also De Leon v. Secretary*, 734 F.2d 930, 935 (2d Cir. 1984). If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability. *Melligan v. Chater*, 1996 WL 1015417, at *8 (W.D.N.Y. 1996). The "[p]roper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may

26

still perform." *Lugo v. Chater*, 932 F. Supp. 497, 503 (S.D.N.Y. 1996).  Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983).

In this case, the ALJ posed four hypothetical questions to the vocational expert.  (T. 300-311).  In the second hypothetical question, the ALJ asked the vocational expert to assume that the individual was "capable of performing work at the light exertional level with only occasional climbing, stooping, crouching, crawling" but could not perform "repetitive activities using the right dominant hand" and had  "occasional difficulties with attention/concentration, stress and interacting with others".  (T. 63, 302-305).   In response, the vocational expert testified that such an individual would be able to do the job of a mail clerk or messenger.  (T. 64, 309).  The fourth hypothetical question contained the same limitations however, the ALJ asked the expert to assume the individual was limited to "sedentary work".  (T. 310).   In response to that hypothetical, the expert testified that there were no jobs available to such an individual.  (T. 311).

Plaintiff argues that the ALJ erred when he relied upon the vocational expert's response to the second hypothetical question. (Dkt. No. 7, p. 22).  Plaintiff claims that the ALJ should have relied upon the vocational expert's response to the fourth hypothetical question as it "more closely resembles [plaintiff's] profile". (Dkt. No. 7, p. 22).  Defendant argues that the ALJ failed to explain and reconcile the testimony of the vocational expert with the information contained in the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT").  (Dkt. No. 16, p. 4). Specifically, defendant claims that vocational expert's response to the second hypothetical

question was in conflict with the DOT and that remand is required to resolve the conflict pursuant to SSR 00-4p.[18]  (Dkt. No. 16, p. 5).

As discussed above, the ALJ failed to apply the treating physician rule to Dr. Nocella's opinions and therefore, substantial evidence does not support the ALJ's assessment of plaintiff's RFC.  Consequently, the hypothetical questions posed to the vocational expert did not accurately reflect all of the plaintiff's impairments, limitations and restrictions and the ALJ erred when he relied upon the expert's response.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981) (stating that testimony of a vocational expert is only useful if it addresses the particular limitations of the claimant).  As the Court has determined that the hypothetical questions posed to the expert were flawed, the Commissioner's argument that remand is necessary to reconcile the vocational expert's testimony with information contained in the DOT is moot.

### E.     Remand or Reversal

Plaintiff contends that the Commissioner's decision should be reversed rather than remanded based upon the vocational expert's conclusion that there were no jobs that plaintiff could perform.  (Dkt. No. 7, p. 23).   Defendant argues that the record does not compel a conclusion that plaintiff was disabled and therefore, the decision should be remanded for further proceedings.  (Dkt. No. 16, p. 12).

The court has the power to affirm, modify, or reverse the decision of the Commissioner upon the pleadings and transcript of the record, "with or without remanding the cause for a rehearing ".  42 U.S.C. § 405(g); *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004).  Reversal

---

[18] Pursuant to Social Security Ruling 00-4p, an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs [vocational experts] or VSs [vocational specialists] and information in the DOT."  *Mendez v. Barnhart*, 2007 WL 186800, at *13 (S.D.N.Y. 2007); *see also Berman v. Comm'r of Social Security*, 2007 WL 2178073, at *1 (E.D.N.Y. 2007).  When such conflicts arise, the ALJ must "[e]xplain in the determination or decision how any conflict that has been identified was resolved."  SSR 00-4p, 2000 WL 1898703, at *2 (S.S.A. 2000).

for payment of benefits is appropriate "[w]here the existing record contains persuasive proof of disability and a remand for further proceedings would serve no further purpose". *Martinez v. Barnhart*, 262 F.Supp.2d 40, 49 (W.D.N.Y. 2003) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).   The Second Circuit has held that "where application of the correct legal principles . . . could lead to only one conclusion, there is no need to require agency reconsideration." *Matovic v. Chater*, 1996 WL 11791, at *6 (S.D.N.Y. 1996) (quoting *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

Remand is necessary when the medical evidence does not lead "inexorably to a single conclusion".  *Byrd v. Apfel*, 2000 WL 1100336, at *3-4  (E.D.N.Y. 2000) (quoting *Schaal,* 134 F.3d at 505) .  A remand for further evidentiary proceedings is the appropriate disposition in a case where the ALJ made errors of law in not giving appropriate weight to the opinion of the treating physician.  *See Zwick v. Apfel*, 1998 WL 426800 at *9 (S.D.N.Y. 1998).  Where the ALJ does not correctly apply the law by failing to apply the treating physician rule properly, reversal and remand is generally appropriate. *See Schaal*, 134 F.3d at 505; *see also Matovic*, 1996 WL 11791, at *7 (holding that the court cannot make the determination as to whether the claimant would have been adjudged disabled had the ALJ properly applied the treating physician rule as that decision is within the discretion of the ALJ); *see also Kiggins v. Shalala*, 1995 WL 450478, at *5 (S.D.N.Y. 1995) (reversing and remanding for ALJ's failure to apply regulatory criteria for weighing treating physician's opinion).  Moreover, a plaintiff's limitations are not obvious when the record contains numerous conflicting medical source statements.  *See Dioguardi v. Comm'r of Social Sec.*,  445 F.Supp.2d 288, 299 (W.D.N.Y. 2006) (holding that even if the court could discern the plaintiff's RFC from the record, remand was still necessary for further administrative

proceedings to determine whether the plaintiff could perform jobs available in the national economy based upon the new RFC).

In the case at hand, the ALJ improperly applied a legal standard requiring remand for further proceedings pursuant to § 405(g).  As previously discussed, the ALJ failed to follow the treating physician rule and failed to adequately explain his reasons for assigning only "some weight" to Dr. Nocella's opinion.  Accordingly, substantial evidence does not support the ALJ's RFC assessment.  However, this conclusion does not entitle plaintiff to an outright reversal for calculation of benefits.  The record contains conflicting opinions regarding plaintiff's limitations.  Upon further review, the ALJ may still determine that Dr. Nocella's opinions should not be afforded controlling weight.  It is for the ALJ, on remand, to assess all of the medical evidence and specifically articulate what weight should be properly assigned to Dr. Nocella's opinion and fully explain the reasons upon which he relies.  *See Byrd*, 2000 WL 1100336, at *3-4.  The ALJ must then reassess plaintiff's RFC and properly analyze step five.  If a vocational expert is called to testify, the ALJ must present hypothetical questions that accurately state plaintiff's RFC and limitations.  The determinations needed at steps four and five cannot be made by this Court, given its limited jurisdiction under 42 U.S.C. § 405(g).  *See Dioguardi*, 445 F.Supp.2d at 300.

## VI.     CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with the above; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**, as such,

any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated: March 20, 2009
Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge